

DA 06-0364

IN THE SUPREME COURT OF THE STATE OF MONTANA

2007 MT 256

CITY OF BOZEMAN, MONTANA,

        Plaintiff and Appellee,

  v.

DEANA A. TAYLEN and WILLIAM N. TAYLEN,

        Defendants and Appellants.

APPEAL FROM:    District Court of the Eighteenth Judicial District,
In and For the County of Gallatin, Cause No. DV 05-0653
Honorable Holly B. Brown, Presiding Judge

COUNSEL OF RECORD:

        For Appellants:

                Deana A. Taylen and William N. Taylen (*Pro Se*), Bozeman, Montana

        For Appellee:

                Timothy A. Cooper, Assistant City Attorney, Bozeman, Montana

Submitted on Briefs:  January 17, 2007

Decided:  October 9, 2007

Filed:

_____
                Clerk

Justice John Warner delivered the Opinion of the Court.

¶1    Appellants William and Deana Taylen (Taylens), appearing *pro se*, appeal two orders from the Eighteenth Judicial District Court, Gallatin County, granting the City of Bozeman's (the City) motions for preliminary condemnation and immediate possession. We affirm.

¶2    The Taylens raise the following issues on appeal:

¶3    1. Did the District Court err in finding that the City of Bozeman made an offer to purchase their property before proceeding with condemnation, as required by § 70-30-111(4), MCA?

¶4    2. Did the District Court err in granting the City of Bozeman immediate possession of the Taylens' property?

BACKGROUND

¶5    West Durston Road (the Road) is an east-west road in Gallatin County, which is located both inside and outside of the Bozeman city limits. The City has responsibility for those stretches of the Road within city limits and, through an agreement with the County, is also responsible for some portions of the Road which technically fall outside City limits. The Road consisted of two lanes, with little shoulder area, no curbs or gutters, and no sidewalks or bike lanes. Appellants own property adjacent to the Road in Gallatin County.

¶6    In 1998, the City began reviewing the possibility of making improvements to the Road and, in 2001, the City Commission adopted the Greater Bozeman Area Transportation Plan 2001 Update (Transportation Plan), which identified the Road as a minor arterial road. Also around this time, the City determined the Road needed improvement under the Capital Improvements Program, a method used by the City for determining funding priorities for various public works projects throughout Bozeman. According to standards set forth in the

2

Transportation Plan, a minor arterial road requires at least two lanes for traffic, as well as sidewalks, bike lanes, and curbs and gutters on each side of the road. At that time, the Road did not meet the standards for a minor arterial road.

¶7 In 2001 the City hired an engineering firm to begin with the improvement process. Around this time, the City also began negotiating with landowners adjoining the Road to acquire additional land where construction was scheduled to take place. Three years later, in 2004, the City Commission determined the Road was unsafe and agreed to use impact fees for the project, as well as to establish a Special Improvement District to fund the needed improvements. The Commission also discussed the possibility of condemning the remaining properties necessary to complete the project.

¶8 During this time, the City continued to negotiate with property owners in the Durston West area. On June 21, 2005, the City sent the Taylens a final written offer to purchase the necessary right-of-way from Taylens for $25,500. The letter included a copy of an appraisal of the property, an engineer's drawing of the land the City wanted to purchase, a legal description of the property, and a proposed purchase agreement. The letter stated the Taylens had until July 18, 2005, to accept the City's offer.

¶9 The City did not receive a reply to its offer from the Taylens and on July 18, 2005, the City Commission authorized City officials to proceed with condemnation. Despite this authorization, however, the City continued to negotiate with the Taylens from September through December of that year. In a letter dated October 17, the City offered to purchase the property for $38,100. Then, following the City's filing of its complaint for condemnation in

3

late October, the City sent a third written offer to the Taylens to purchase the property for $43,382.

¶10 On December 1, 2005, the Taylens signed a purchase agreement which was included with the City's third offer. They also signed a quit claim deed and a temporary access easement that had been included with the offer. The purchase agreement, however, had not been signed by the City.

¶11 The Taylens became concerned that they would not be paid the purchase price of $43,382 prior to January, 2006. In order to alleviate those concerns, the City placed approval of the documents on the agenda for the City Commission's December 19, 2005, meeting. At that meeting, the Commission authorized the city manager to sign the purchase agreement to complete the transaction. However, that same day, Taylens served a letter on the City retracting their prior acceptance of the purchase offer.

¶12 On March 9, 2006, the District Court held a preliminary condemnation hearing. At this hearing, the Taylens did not dispute that the City desired to condemn their property for a public purpose. When asked by the court whether they had any objections to the condemnation proceedings, Taylens only questioned the sufficiency of the amount of the City's offer. The following month, the District Court issued its order granting the City's motion for preliminary condemnation.

¶13 The City then filed a motion for immediate possession, which the District Court also granted. The City took possession of the property and completed the improvements to the Road.

4

¶14 From these orders, the Taylens appeal. This appeal does not concern the amount the City must pay for the property condemned.

## STANDARD OF REVIEW

¶15 We review the findings of fact made by a district court sitting without a jury to determine if the court's findings were clearly erroneous. *Ray v. Nansel*, 2002 MT 191, ¶ 19, 311 Mont. 135, ¶ 19, 53 P.3d 870, ¶ 19 (citing M. R. Civ. P. 52(a)). A district court's findings of fact are clearly erroneous if substantial credible evidence does not support them, if the trial court has misapprehended the effect of the evidence, or if a review of the record leaves this court with the definite and firm conviction that a mistake has been committed. *Ray*, ¶ 19 (citation omitted). Additionally, we must view the evidence in the light most favorable to the prevailing party when determining whether substantial credible evidence supports the district court's findings. *Ray*, ¶ 19 (citation omitted).

¶16 We review a district court's conclusions of law to determine if they are correct. *Ray*, ¶ 20 (citation omitted).

## DISCUSSION

¶17 **Did the District Court err in finding that the City of Bozeman made an offer to purchase their property before proceeding with condemnation, as required by § 70-30-111(4), MCA?**

¶18 Section 70-30-111(4), MCA, requires a condemnor to show by a preponderance of the evidence that "an effort to obtain the property interest sought to be taken was made by submission of a written offer and the offer was rejected." According to the Taylens, the District Court erred in finding that the City complied with § 70-30-111(4), MCA, because

5

the term "offer" means a legally binding commitment. The Taylens then argue that the City's attempt to purchase the Taylens' property was not a legally binding commitment because even after they signed the purchase agreement, the City Commission still had to approve it before it bound the City.

¶19 An offer is a promise; it is a statement made by the offeror of what he will give in return for some promise or act of the offeree. *Sunburst Oil & Gas Co. v. Neville*, 79 Mont. 550, 563, 257 P. 1016, 1019 (1927). It is true that in order for an offer to mature into a binding contract, both parties must consent to the terms of the contract. Section 28-2-102(2), MCA. However, as the District Court correctly noted, § 70-30-111(4), MCA, does not include the term "binding." Nor does the statute require that a binding contract be formed as Taylens argue. It only requires that a condemnor, such as the City in this case, make an effort to obtain the property interest sought by submission of a written offer, before it proceeds to condemnation. We construe the language of a statute according to its plain meaning. *McClure v. State Compensation Ins. Fund*, 272 Mont. 94, 98, 899 P.2d 1093, 1096 (1995). In construing a statute, it is the office of the judge simply to ascertain and declare what is in terms or in substance contained in the statute, not to insert that which has been omitted or omit that which has been inserted. Section 1-2-101, MCA. For this Court to adopt the Taylens' argument, it would have to insert into § 70-30-111(4), MCA, the requirement that a binding contract be entered into before the City could commence condemnation proceedings, even though the statute requires only that the City make an offer to do so. This, we decline to do. *See McClure*, 272 Mont. at 98, 899 P.2d at 1096.

6

¶20 The City's June 21, 2005, letter specifically said it was a "Final Offer to Purchase Right of Way along Durston Road." It also included an appraiser's report, a property description, and a purchase agreement. This letter and the enclosed documents constitute an offer to acquire the property which is sufficient to meet the requirements of § 70-30-111(4), MCA. When the Taylens failed to accept the offer by July 18, 2005, the offer expired. Thus, the City could proceed to condemnation. There is nothing in the statutes that prohibits the City from making further offers after a condemnation action is filed.

¶21 The District Court correctly concluded that the City's offer to the Taylens met the requirements set forth in § 70-30-111(4), MCA, and, thus did not err in granting the City's motion for preliminary condemnation.

¶22 **Did the District Court err in granting the City of Bozeman immediate possession of the Taylens' property?**

¶23 Taylens argue on appeal that the District Court erred by granting the City immediate possession of their property following the court's order for preliminary condemnation.

¶24 Section 70-30-207(1), MCA, provides in relevant part:

Within 30 days of entry of a preliminary condemnation order, the condemnee shall file a statement of the condemnee's claim of just compensation. If within 20 days of service of the condemnee's claim the condemnor fails to accept the claim, the court shall appoint condemnation commissioners.

¶25 Section 70-30-311(1)(a), MCA, provides that:

[U]pon payment into court of the amount of compensation claimed by the condemnee in the condemnee's statement of claim of just compensation under 70-30-207 or the amount assessed either by the commissioners or by the jury, the condemnor is authorized:

. . . .

7

(ii) if not in possession, to take possession of the property and use and possess the property during the pendency and until the final conclusion of the proceedings and litigation[.]

¶26 Following the District Court's order of preliminary condemnation on April 21, 2006, the City moved for immediate possession on April 24. The District Court granted the City's motion for immediate possession on April 28. Not until May 5 did Taylens file a statement of claim for just compensation in the amount of $165,000, pursuant to § 70-30-207(1), MCA.

¶27 According to the Taylens, the District Court erred by granting the City's motion for immediate possession under § 70-30-311(1)(a)(ii), MCA, before the 30-day limit to file their claim for just compensation in § 70-30-207(1), MCA, had expired. Thus, Taylens argue, because the court granted the City's motion without posting the $165,000 compensation claimed by the Taylens and because neither a jury nor condemnation commissioners determined an alternative amount as required by § 70-30-311(1)(a), MCA, the court wrongly granted possession to the City.

¶28 Although the record reflects the District Court went too fast in granting possession of the property to the City, the Taylens failed to avail themselves of the appropriate legal remedies to preserve the status quo.

¶29 After the District Court granted the City's motion for immediate possession, the Taylens made no motion in the District Court to stay its order pending appeal as provided for in § 70-30-312(2), MCA. Nor did Taylens request the District Court require the City to give "a bond or . . . sufficient sureties" while the Taylens appealed, as provided in § 70-30-

8

311(3), MCA. Former M. R. App. P. 1(b)(2) provided that this Court could have stayed the order of immediate possession.[1] Taylens did not move this Court for a stay.

¶30 Because the Taylens failed to avail themselves of appropriate remedies to preserve the status quo, the City proceeded with the work and has now completed the improvements to the Road on the property. Thus, Taylens have lost the right to raise this issue on appeal. *See Montana Power Co. v. Charter*, 173 Mont. 429, 432, 568 P.2d 118, 119 (1976).

## CONCLUSION

¶31 For the foregoing reasons, the preliminary condemnation order and the order granting the City immediate possession entered in the Eighteenth Judicial District Court are affirmed.

/S/ JOHN WARNER

We Concur:

/S/ PATRICIA COTTER
/S/ JAMES C. NELSON
/S/ W. WILLIAM LEAPHART
/S/ BRIAN MORRIS

---

[1] The stay provisions of former M. R. App. P. 1(b)(2) have now been superceded by M. R. App. P. 22.

9